ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
FEB 29 2008
U.S. COURT OF FEDERAL CLAIMS

CA, INC.,
One CA Plaza
Islandia, NY 11749,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

No. 08-119 C

**COMPLAINT**

CA, Inc., for its Complaint in this action, alleges as follows:

**INTRODUCTION**

1. Plaintiff CA, Inc. ("CA") brings this Complaint against the United States of America (1) for its use of and benefit from CA's software products and services without payment and, in the alternative, (2) for its taking of CA's software products and services for public use without compensation in violation of the Fifth Amendment of the United States Constitution. This action seeks to recover $5,270,820.99 plus interest for the full value of CA's software products used by NAVEUR without payment for the software licenses.

**PARTIES**

2. Plaintiff CA is a Delaware corporation with its principal place of business in Islandia, New York. Computer Associates International, Inc., became known as Computer Associates, Inc., and in 2006, legally changed its corporate name to CA, Inc. CA is one of the world's largest publishers of management software, and designs, markets, and licenses computer

software products that allow business to run, manage, and automate critical aspects of their information technology environments.

3. Defendant is the United States of America, acting through the Department of the Navy (the "Navy").

## JURISDICTION

4. This Court has jurisdiction over the subject matter of this action pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) over both the contract claim for damages and the claim for just compensation for the Navy's long term use of CA's property in the form of software licenses.

5. This Court has jurisdiction over this timely partial appeal of the contracting officer's final decision pursuant to Section 10(a) of the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 609(a).[1] Plaintiff filed a timely certified claim with the contracting officer by letter dated June 9, 2006. The contracting officer issued a final decision denying Plaintiff's claim by letter dated March 1, 2007.

## STATEMENT OF FACTS

### A. The Navy Authorized and Directed Its Contractor to Obtain CA's Unicenter TNG Software Under CA's Army Contract

6. In or about early 2002, the U.S. Naval Forces Europe ("NAVEUR") had a need for enterprise management software for its network facilities in Europe. It had contracted, through the Navy Space and Warfare ("SPAWAR") center in Charleston, South Carolina, with PSC, Inc., a provider of software and IT services. Upon information and belief, Contract No.

---

[1] CA's certified claim had included compensation for earlier purchases by the Navy of CA software. CA's appeal of the contracting officer's final decision in this Court is limited to the software purchased and delivered in or about late March and early April 2002.

N68786-97-C-6461, required PSC – which in May 2002 was acquired by and subsequently merged into STG, Inc. – to furnish software and IT services in support of various Naval network facilities, including NAVEUR's.

7. In order to obtain CA's Unicenter TNG enterprise management software at the lowest discount CA was offering the U.S. government, on or about March 21, 2002, the Navy issued, pursuant to FAR § 51.101, an "Authorization to Purchase" to the Army which stated:

> 1. This letter serves as an authorization for PSC Inc. to utilize the PM, Small Computer Program (PM SCP) to procure software and services provided by Computer Associates International, Inc. [in] support of Commander in Chief US Naval Forces Europe (CINCUSNAVEUR), as awarded under contract # N68786-07-C-6461.
>
> 2. The contract to which this authorization applies is CA Enterprise Management Software Blanket Purchase Agreement DAAB15-99-A0018.

This Authorization to Purchase was executed by the Deputy Chief of Staff, for NAVEUR's Command, Control, Communications and Computers on behalf of the Commander in Chief, NAVEUR who was fully authorized to authorize PSC to purchase under the Army BPA on the Navy's behalf.

8. The Navy's direction to PSC to use the Army's Small Computer Program Blanket Purchase Agreement ("BPA") was in accordance with official Department of Defense ("DoD") policy which at least as of July 2000 required all components of DoD to acquire certain software from the Army BPA, and further stated that the government contractor "should" be authorized, pursuant to FAR § 51.101, to order software through the Army BPA. *See* DoD, *Guidance and Policy Memorandum No. 12-8430 – Acquiring Commercially Available Software*, §§ 6.2.1 and 6.2.3 (July 26, 2000).

9. CA's BPA with the Army Small Computer Program, DAAB15-99-A-0018 ("Army BPA"), provided the Army and other authorized DoD ordering entities the opportunity to purchase perpetual licenses for certain CA software, including Unicenter TNG software products. The Unicenter TNG software consisted of certain core or "base enterprise" products based upon the type of server (NT or Unix) on which it was to be used as well as a desktop version. The Unicenter TNG product line also included certain optional software that could only be used in conjunction with the base enterprise software products. Perpetual licenses for some of the optional Unicenter TNG software products are sold on a "lot" basis -- meaning that the buyer may use the software on any machine for which the base product has been licensed. The prices for perpetual licenses for the Unicenter TNG base enterprise as well as the remainder of the optional software products are based upon the number and type of machine on which the software will be installed and used.

10. The prices CA offered under the Army BPA were discounted from those offered generally to the U.S. government under a 1997 Federal Supply Schedule contract, GS-35F-0793J, with the United States General Services Administration ("GSA Schedule Contract"). The Army BPA was expressly subject to terms and conditions of the GSA Schedule Contract. Specifically, under the GSA Schedule Contract, CA only offered U.S. government agencies perpetual licenses for its software products which were subject to the specified software use limitations. The use of the software was limited both to the number of power units and to the current computing environment and operating system on which it was installed. No term licenses (*i.e.*, licenses valid for only a specific period) were offered under the GSA Schedule Contract or the Army BPA.

**B. In Reliance on the Navy Authorization, CA Delivered the Unicenter TNG Software and Associated Licenses to the Navy**

11. Based upon the Navy's Memorandum of Authorization, on March 26, 2002, CA offered to the Navy through its designated and authorized procurement agent, two sets of quotes based upon the steeply discounted prices available to the U.S. Army and other authorized DoD customers for perpetual licenses for the Unicenter TNG Base Enterprise and optional software products. The first set of quotes covered licenses for the Unicenter TNG Base Enterprise software products, and was divided into two installments. The first installment payment of $249,882.71 was due March 31, 2002 and provided the software for installation and associated perpetual licenses as follows:

a. Eight (8) perpetual licenses (and warranty through March 31, 2006) for CA's Unicenter TNG NT Servers (CLIN 0004AB of the Army BPA);

b. Two (2) perpetual licenses (and warranty through March 31, 2006) for CA's Unicenter TNG Unix Agent (CLIN 0004AD of the Army BPA);

c. Twelve (12) perpetual licenses (and warranty through March 31, 2006) for CA's Unicenter TNG NT Agent (CLIN 0004AE of the Army BPA); and

d. Twelve Hundred (1,200) perpetual licenses (and maintenance through March 31, 2006) for CA's Unicenter TNG for Desktops (CLIN 0004AF of the Army BPA).

12. A second installment payment of $1,100,392.57 was due seven months later (in the next fiscal year) which expanded the number of perpetual licenses for the above products by 20 for the Unicenter TNG NT Server, by 28 for the Unicenter TNG Unix Agent, by 99 for the Unicenter TNG NT Agent and by 5,800 for the Unicenter TNG Desktop software. This brought the total complement of perpetual licenses up to the quantity needed for the NAVEUR network facilities.

13. With respect to the Unicenter TNG optional software products, NAVEUR and PSC sought the full complement of perpetual licenses needed for the NAVEUR network facilities (28 for NT servers; 30 for Unix Agents; 142 for NT Agents and 7,000 for Desktops), and sought to fund the purchase incrementally over three fiscal years (albeit only a 19 month period). CA's offer to NAVEUR and PSC identified the prices for perpetual licenses for the suite of optional Unicenter TNG software products if the full payment was made at the time of shipment.

14. CA's offer for perpetual licenses for the Unicenter TNG optional products also presented an incrementally funded approach (for a higher lump sum price) if payment were stretched out over three installments crossing three fiscal years. This approach was subject to the standard FAR clause (52.232-19) making the out year payments subject to the availability of funds for the program. Under this incrementally funded approach, a total amount of $5,129,304.94 was due for the suite of perpetual software licenses, divided into three installments: $1,096,271.14 was due and payable March 31, 2002; $1,736,523.36 was due and payable October 31, 2002; and $2,296,510.44 was due and payable October 31, 2003.

15. Acting as the Navy's agent, PSC accepted CA's offers and purchased the perpetual software licenses under the Army BPA. On or about March 27, 2002, PSC issued a check to the Army for the full ($249,882.71) first installment for the Unicenter TNG Base Enterprise software products and CA shipped those products to NAVEUR, via PSC, on or about March 29, 2002. CA received the direct benefit of this payment to the Army because the Army had pre-paid for perpetual licenses for the Unicenter TNG Base Enterprise software products, and, accordingly, this payment reduced CA's credit balance to the Army.

16. On the same day, PSC sent a check for $400,117.29 "to be applied as partial payment of the first payment" due for the perpetual licenses for the suite of Unicenter TNG optional products. Although this was only a partial payment of the first installment, on or about April 1, 2002, CA shipped this suite of software products to NAVEUR, via PSC. After numerous follow-up phone calls and meetings, PSC subsequently made two additional partial payments towards the first installment: (1) a $500,000 payment on or about October 10, 2002 and (2) a $58,579.23 payment on or about November 26, 2003.

**C. The Navy Received and Used CA's Software But Has Never Completed Payment for the Perpetual Licenses**

17. On October 31, 2002, the second installment of $1,100,392.57 for the Unicenter TNG Base Enterprise software became due and payable. Nonetheless, neither the Navy nor PSC completed payment for the full complement of perpetual licenses needed and, upon information and belief, used by NAVEUR.

18. As noted above in ¶ 17, the Navy and PSC failed to complete payment even for the first installment of the perpetual licenses for the suite of Unicenter TNG optional software products. Neither did either pay the second or third installments when they became due as set forth in ¶ 15 above. Accordingly, $4,170,428.42 remains unpaid for the perpetual licenses for the Unicenter TNG optional products installed and used by NAVEUR.

19. Upon information and belief, the Navy had appropriated funds available in Fiscal Years 2003 and 2004 to complete the payment for the incrementally funded software products and committed more than sufficient funds to PSC's (by then STG's) efforts on its behalf. On or about August 2003, the Navy instructed STG not to purchase further CA products, but at no time did it cancel the prior installment and incrementally funded purchases.

20. Despite the nonpayment, throughout calendar years 2003 and 2004, CA continued to receive and respond to service calls related to the Unicenter TNG Base Enterprise and optional software from NAVEUR facilities demonstrating that it was still resident on NAVEUR's hardware and being used by its employees. Under the perpetual licenses provided under the GSA Schedule Contract (which governed the Navy's purchase under the Army BPA), the Navy could only use the CA software "on designated CPUs and operating systems." While the software license for the Unicenter TNG Base enterprise software permitted installation on a replacement operating system, the Navy was required to provide prior notice to CA, it could not exceed the maximum power unit limitations established for the purchase, and it had to certify to CA in writing that all copies of the prior operating version had been deleted. No such notice or certifications were received.

21. Due to the Navy's and STG's continued failure to pay the delinquent amounts for the software installed and being used at the NAVEUR facilities, by letter dated April 8, 2005, CA exercised its rights to revoke the perpetual licenses, effective May 8, 2005.

22. Nevertheless, upon information and belief, the Navy may have continued to use the CA Unicenter TNG software at least as late as August 2005 and possibly thereafter.

23. The total amount due and payable to CA for the unpaid balances for the perpetual licenses for the Unicenter TNG Base Enterprise and optional software products is $5,270,820.99, which remains due today.

## <u>COUNT I</u>

### Contract Claim For Nonpayment

24. CA herein repeats and realleges Paragraphs 1-23 as if fully stated herein.

25. The Navy's authorization of PSC (now STG) to use the Army BPA was issued pursuant to FAR Subpart 51.1. FAR § 51.102(f)(2) provides that "after issuing the authorization, the authorizing agency shall be responsible for . . . [a]ny indebtedness incurred for supplies or services and not satisfied by the contractor."

26. In the alternative, the Navy authorized PSC (now STG) to act as its agent in the procurement of the CA Unicenter TNG software products.

27. STG, PSC's successor in interest, remains indebted to CA for the unpaid balance for the perpetual licenses purchased in March 2002. Accordingly, the Navy is responsible to CA for PSC's indebtedness.

## COUNT II

### Taking Of Property Without Just Compensation

28. CA herein repeats and realleges Paragraphs 1-23 as if fully stated herein.

29. Under the Fifth Amendment of the United States Constitution, no private property shall be taken for public use without just compensation.

30. CA owns the intellectual property practiced by, incorporated in, or represented by the CA software, which the Navy accepted, reproduced, installed, or used.

31. The Navy's continued use of CA's products and services for public use without just compensation effected a taking of CA's software, especially given that:

a. The Navy has never completed payment for CA's Unicenter TNG software installed and used on the NAVEUR CPUs and servers;

b. CA terminated the Navy's licenses to CA's software; and

c. Upon information and belief, the Navy used the software on more equipment than it was entitled to under the licensing agreement.

32. The Navy's use of CA's software constitutes a taking for public use for which CA is entitled to just compensation under the Takings Clause of the Fifth Amendment of the United States Constitution.

33. Plaintiff CA is entitled to just compensation in the amount of at least $5,270,820.99, plus interest as required by law, representing the fair value (net of the prior payments for CA's software).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CA respectfully prays for judgment as follows and requests that this Court:

A. Enter an order awarding Plaintiff CA a judgment in the amount of $5,270,820.99, plus interest pursuant to 41 U.S.C. § 611, for the Navy's use of CA's software and services without payment; or

B. In the alternative, enter an order awarding Plaintiff CA just compensation for the taking of its property in violation of the Fifth Amendment to the United States Constitution in the amount of at least $5,270,820.99;

C. On both counts, such interest and costs as available by law; and

D. Grant such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Alan W. H. Gourley
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 624-2500

Fax: (202) 628-5116

Counsel for Plaintiff CA, Inc.

Of Counsel:

Puja Satiani
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

DATED: February 29, 2008