IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CA, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 08-119C |
| | ) | (Judge Christine O. C. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF TERRY A. SPRAGUE IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT I OF PLAINTIFF'S COMPLAINT

1. My name is Terry A. Sprague.

2. I am an employee of the Space and Naval Warfare Systems Command (SPAWAR) Systems Center Charleston. My current position is Head, Shore Cryptologic Systems, Engineering Branch.

3. I am aware of the complaint filed by CA, Inc., against the United States in the Court of Federal Claims, as well as specific allegations therein.

4. In 1997 the Navy awarded Contract 97-C-6461 to PSC for system support services in support of Command, Control, Communications, Computers and Intelligence Systems at various Navy facilities worldwide. The contract required PSC to provide services and supplies by way of individual technical direction letters as required by the Navy.

5. The current contracting officer is Mary Van Meer.

6. From the 1997 to 2003 time period, I served as the contracting officer's representative (COR) for Navy Contract 97-C-6461. In that capacity, I was authorized to provide guidance to the contractor and provide surveillance of the contractor's activities under Navy Contract 97-C-6461. I was instructed, by the terms of Navy Contract 97-C-6461, that I was not

**ATTACHMENT 1**

authorized to make any representations or commitments of any kind on behalf of the contract. I was further instructed that I was not authorized to alter the contractor's obligations or change the specifications in Navy Contract 97-C-6461.

7. While as a general rule, the use of GSA Schedules and BPAs is confined to agencies of the Federal Government, PSC's contract contained FAR 52.251-1, "Government Supply Sources," which provides in pertinent part as follows:

> The Contracting Officer may issue the Contractor an authorization to use Government supply sources in the performance of this contract. Title to all property acquired by the Contractor under such an authorization shall vest in the Government unless otherwise specified in the contract. Such property shall not be considered to be Government-furnished property, as distinguished from Government property.

FAR 52.251-1.

8. In addition, FAR 51.101 provides in pertinent part as follows:

> If it is in the Government's interest, and if supplies or services required in the performance of a Government contract are available from Government supply sources, contracting officers may authorize contractors to use these sources . . . .

9. These provisions permitted the contracting officer (CO) to authorize PSC to purchase against the BPA, but were not authorizations themselves.

10. In order for PSC to purchase against the BPA in connection with its performance of Navy Contract 97-C-6461, the CO was required to give her specific authorization to do so.

11. There were no provisions in Navy Contract 97-C-6461 which named PSC as a purchasing agent of the Government or which held the Navy liable to CA for PSC's purchases.

12. PSC did not require that the CO's approval for purchases it made under Navy

Contract 97-C-6461 to the extent they were not acquired through Government supply sources.

13. To the extent that PSC did purchase CA's software through Government supply sources in connection with its performance under Navy Contract 97-C-6461, it did so in its own name.

14. Under FAR 52.251-1 only the contracting officer for the contract in question is authorized to permit a prime contractor to order products against a BPA.

15. I never authorized PSC, the prime contractor, to purchase software from CA, Inc., against a BPA.

16. I did not authorize PSC, the prime contractor, in writing, verbally, or otherwise, explicitly or implicitly, to use any Government supply sources, such as the BPA, as a means of providing products and services required by the contract.

17. Based upon my review of the Navy Contract 97-C-6461 files, and my personal involvement in administering the contract, no contracting officer or contracting officer's representative ever authorized PSC to purchase software from CA against the BPA.

18. Based upon my review of the contract files for the contract and my personal involvement in administering the contract, D.F. Kerrigan has never been responsible for, or involved in any capacity with, Navy Contract 97-C-6461.

19. I am aware that, as part of its case, CA has produced a memorandum dated March 21, 2002 (Kerrigan Memorandum) signed on behalf of D. F. Kerrigan, Deputy Chief of Staff, Command, Control, Communications, and Computers, U.S. Naval Forces Europe, which identifies "Authorization to Purchase" as its subject. That document provides as follows

1. This letter serves as an authorization for PSC Inc. to

utilize the PM, Small Computer Program (PM SCP) to procure software and services provided by Computer Associates International, Inc. [in] support of Commander in Chief US Naval Forces Europe (CINCUSNAVEUR), as awarded under contract # N68786-97-C-6461.

2. The contract to which this authorization applies is CA Enterprise Management Software Blanket Purchase Agreement DAAB15-99-A0018.

20. I had never seen, nor had any knowledge of, the March 21, 2002 Kerrigan Memorandum, signed on behalf of Donald F. Kerrigan, until July 2004. I obtained it at that time in connection with an inquiry conducted by the Office of the Inspector General.

21. Although I know Donald. Kerrigan, the individual upon whose behalf the Kerrigan Memorandum was signed, I did not authorize Mr. Kerrigan to issue that memorandum, nor did I possess authority to do so. In fact, I know that instructing or advising Mr. Kerrigan to do so would be outside my authority as COR, and that such direction would have to issue from the contracting officer, if at all.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2008.

Terry A. Sprague